Welcome. Our last case is 20-20108, McMillan v. Amazon. We'll first hear from Mr. Murphy. Good afternoon, and may it please the court, Brendan Murphy for Amazon.com. The court should reverse and direct entry of judgment in favor of Amazon because the district court exceeded the bounds of established Texas law in deeming Amazon the seller of a new theory of seller liability that the Texas legislature and Texas Supreme Court have not embraced. That theory essentially was that one can be a seller by providing services that involve possessing and delivering the product. There was never really any dispute that Amazon itself did not sell the product. The district court acknowledged that the actual seller was who's a named party but was never served. It also acknowledged at pages 10-12 and 10-14 of the record that Amazon was a service provider. What it did was use the placing in the stream of commerce language in the definition of seller under the common law of 402A and under the Texas Product Liability Act as a hook to make Amazon a seller, and there is no support for that. Neither of those definitions include any language that would permit treating possession of or delivery of a product as selling. Incidentally, there was no delivery of the product here because at R485, it makes clear that the product was actually delivered by UPS, not Amazon, so we're really focusing on possession. The concept of otherwise placing in the stream of commerce was addressed very clearly by the Texas Supreme Court in the new Texas auto case, and that case is significant not just for its analysis but also for the type of entity that it addressed. The auction in that case was selling cars. I mean, auction sells cars. It actually possessed the cars, and it provided all the machinery through which the sale occurred. In fact, it offered an inspection service for cars if people wish to pay for that, so there was actually a lot more extensive contact with the product than happens here. The result alone of new Texas auto where the Supreme Court said that this entity is not a seller, that alone should compel reversal, but the court's analysis is also very significant. The court explained what it regarded as placing in the stream of commerce, and the main point on that is on page 404, I believe it is. The court says that it and the legislature have periodically used the terminology introducing into the stream of commerce and placing in the stream of commerce, and it said that that terminology is intended to describe producers, not just anybody who has some contact with the product, and it specifically referenced entities that somehow introduce a product to the public like MCs and so forth. But in the Texas Auto Council, the court was focused on, and it actually used the phrase, auctioneers are generally not sellers, and it cited the second restatement, the third restatement, and how the third restatement specifically exempts or excludes auctioneers, and the restatements, they don't say anything about e-commerce retailers like Amazon. Well, the restatement, the third restatement does address facilitators generally, and that's restatement third, section 20, comment G, which actually is cited in New Texas Auto, and that cites auctioneers as an example of a great many potential facilitators. The large point of New Texas Auto is the distinction the court drew between placing in the stream of commerce, which could be a seller, a lessor, a bailor, the traditional categories, and entities who facilitate those entities, even though they are connected with sales, even though they provide services that may facilitate sales, those are not considered entities that are placing the product in the stream of commerce, and the court drew that distinction very clearly in its opening, but also in categorizing the types of entities that fall on both sides of that line, so in describing entities that place the product in the stream of commerce, the court cited the traditional categories, the manufacturer, the seller, the dealer, the lessor, the provider, a free sample, and going back to Rourke and McKissin, and then in describing the category of entities that do not place the product in the stream of commerce, that's where all the facilitators come in, and the significant point of that is it actually cited logistics providers as the types of entities that, even though they may be involved in selling products, do not themselves sell products. You're saying involved in, but that's really the main business, is it not? I'm sorry, I missed your question. We used the phrase involved in selling products, but selling products is Amazon's main business, isn't it? Well, if you're just looking at the marketplace, Amazon's main, there are a lot of businesses like web services and so forth, but just look at the marketplace, which I assume is what your question is asking about. Actually, the majority of sales on the marketplace are by third-party sellers. It is true, Your Honor, of course, that Amazon sells some of its own products on the marketplace, and in that situation, Amazon clearly identifies the seller, Amazon has a relationship with the vendor, has a different agreement, the vendor terms and conditions, and Amazon selects the product, sources it, owns it, and transfers title. What is the difference between Amazon as a direct seller versus just facilitating third-party sales? In that circumstance, Amazon would be a retailer. If there were a pie chart dividing Amazon selling directly versus sort of facilitating third-party sales, what would it be? I believe it's about 58% are third-party sales. I don't believe it's in this record. The place to find that, though, is in Jeff Bezos' shareholder letter each year. He typically breaks out the number, and I believe last year was about 58% are third-party sales and 42% are retail. So if this were a retail sale, we wouldn't be here on this issue. We would be here on a different issue, which would be under 82.003, the defense for sellers. So all these examples of facilitators in the restatement, I mean, there are things like advertisers. I mean, here, especially because it's a fulfillment by Amazon case, which I don't think is true of a lot of the other cases that have been out there, you know, it has it in its warehouse. It processes payment. It's the contact for the customer, is my understanding, if the in the restatement and that the Texas Supreme Court has referred to. Well, actually, just to correct one thing, it's not the contact with the customer. It provides the communications tool, and so there is direct communication between the customer and the seller. But it just goes through Amazon. It goes through the website, but it reaches the person in China. That is correct. And so there actually are a number of cases that do deal with a specific circuit, which dealt with fulfillment by Amazon. There's a couple of district court cases, Eberhart and Philadelphia indemnity, and the district courts in New York. So the only thing that FBA really differentiates is possession. Amazon has a possession in its fulfillment center, but it doesn't really have control of the product. And the reason for that is it's just storing the seller's inventory. It's not doing anything with that inventory. The products come in fully packaged, go on a shelf, and then when they're ordered from the third-party seller, they're sent or delivered to UPS or whoever the shipper is and sent to. Are they put in an Amazon box? I mean, they come from this person in China, they're in the warehouse, but then they're put in an Amazon box and handed over to UPS or someone, right? That is correct, Your Honor, unless it's a so-called ship-and-own container. It would go in an Amazon box. That is true. So the courts that have looked at this precise issue, stepping outside Texas, no Texas court has addressed the specific issue of Amazon. The courts that have looked at this issue have looked at FBA and generally said, FBA is just a logistic service. It doesn't really change anything. And that the courts that have looked even outside FBA, and the Ohio Supreme Court is the best recent example of this, have said, Amazon, yes, you're providing the website, you're the place where buyers and sellers meet, but that level, the service you're providing and the control you have over your service is not relevant for product liability purposes because you're not controlling the product. You say no Texas cases have really examined this specific issue, and I think you're right. I mean, Amazon has a novel business model. There really aren't any closely analogous cases that got our decision. We could make this very guess, or we could put our crystal ball to the side and we could certify the Texas Supreme Court. Why would we not do that in a case that's consequential with no guiding state case law? Well, the procedure, of course, exists and has been used before. I don't agree that there's no guiding case law. New Texas auto is pretty much on point. It doesn't involve this precise issue of Amazon, but the business model here is really not that different in anything other than size. The business model involves malls and swap meets and so forth have done this where a bunch of sellers congregate in a particular place. There's eBay, there's Craigslist, there's other The auction, of course, was not an online situation. There are online auctions nowadays, but the mechanics of a sale are really not that much different. A third party is an owner of the product, and the provider of the marketplace provides the place where people meet and exchange goods, or in this case, goods. But Amazon is like all these other entities that where it's the third party who selects the product, sources it from somewhere, sets the price, owns it. Amazon just does this stuff online and at a larger scale than others. The mechanics of a sale are really not that much different from what happened in New Texas auto, other than the way price is established. An auction, of course, is the auction mechanism. Here, the third party seller sets the price. I think that the reason not to certify is that provides the analysis. The district court's error was to shrink New Texas auto down to its smallest possible fact, which was the fact that the auction there took title due to a quirk in the odometer history. It disregarded the analysis of the things that go on one side of placing in commerce versus the other side. Its sole authority for that was the Moses case, which is unpublished and which itself relied on the Intermediate Court of Appeals opinion in New Texas auto. So that was not a valid authority. The other mistake that the district court made was using the fresh coat and center point cases as a springboard to say, you don't have to be selling. It is enough to provide services. Providing services alone can transform you into a seller. The fresh coat and center point cases do not support that. Both those cases involve entities that themselves sold products. Center point itself was a general contractor. It bought the trusses and sold them. Fresh coat was a subcontractor. It bought the siding system and installed them. Those cases are about entities that are themselves sellers, but also provide services. They really don't have anything to do with the issue in this case. So the only real way to establish that Amazon was introducing or placing this product in the stream of commerce was to place Amazon within one of the categories identified by Texas courts as entities that do place in the stream of commerce. Those would be sellers, lessors, providers of free samples, and so forth. The district court never undertook to do that, nor could it. In this case, the product reached the consumer through a sale. So it is, of course, true under Texas law that you do not have to convey title to be considered a seller for liability purposes. But that principle just means that there are other seller-like things like lessors who can be treated as sellers. It does not tell us that title is somehow irrelevant to a transaction where the product reached a consumer through a sale. There's a good deal of Texas law that tells us exactly what a sale consists of. Under the Commercial Code 2-106, a sale consists in the passing of title from the seller to the buyer for a price. When we look at who had title, it was the third-party seller, not Amazon. The Texas Supreme Court recently emphasized the importance of title in the Hagar v. American Multi-Cinema case, which is 605 Southwest 3rd 35, where the court said, Texas courts have long recognized that a sale requires a transfer. To constitute a sale of property, the title to or property in the thing must pass from the seller to the buyer. There's no contention, much less evidence in this case, that Amazon ever held title. I want to conclude in my last minute before rebuttal by saying that the trend in Texas law is away from expanding seller liability. Texas adopted a seller-protective statute, 82.003, and to the extent that there are gaps to be filled, that job or the gap-filling is to be done by the legislature, and the legislature actually has been actively involved in addressing the rules that deal with marketplaces. In 2019, the legislature adopted a tax provision that defined marketplace sellers, facilitators, and so forth, and explicitly treated marketplace providers as sellers for purposes of collecting tax. To the extent anything is to be done in this area to expand Texas law is for the legislature. I'm out of time on my opening. Thank you. All right. Thank you. You'll have five minutes for rebuttal. We'll hear from Mr. Meyerson. Thank you, Your Honors, and may it please the Court. I want to address right away something that my friend and colleague brought up, that the transfer of title is important. Well, if we look at Exhibit J to our summary judgment, which is 520 and 522 of the appellate record, Amazon admits that they transferred the title. This is an Amazon-created document. This is the document agreement between Amazon and the customer, and it says, title for such items passed to you upon our delivery to the carrier. They transferred the title. So let me talk about Texas law. Do you want to rely on that? I thought she said title doesn't matter under Texas law. I didn't think she actually thought about the transfer of title. It doesn't, Your Honor, but Mr. Murphy seems to make it a big deal, a central piece of Amazon's case. Well, they did transfer title. So let's set that aside. I mean, title is not relevant for our possession, and that's what the Texas case is really focused on. I want to say that Texas law and everything we talked about doesn't distinguish between scrolling for an item in a store or strolling through a store. And when Mr. Gartner went to, on Amazon.com, and he picked out this remote, and he placed it in his online shopping cart, and then he went and checked out, this experience, if you can imagine this, if this experience took place within four physical walls, the only difference between that and what happened is that Amazon just gave the product to UPS instead of handing the remote to Mr. Gartner right then and there. Either one of those is placing it in the stream of commerce as required under Chapter 82. So what Judge Gilmore said in order, she said that Amazon was integrally involved in and exerted control over the sale of the remote. And Mr. Murphy, in his brief discussion, talked about, well, it's merely incidental. But I want to talk to you about what I like to call the seven Ps of this case. And so it's possessed, payment, picked, packed, power placed, and post-purchase. This is all part of fulfillment by Amazon. And this case is a fulfillment by Amazon case. It's a very particular way that Amazon does business. And let me explain to you what I mean. At the time that Mr. Gartner picked out this remote and purchased it, that remote was, like Judge Costa said, it was sitting on a shelf at Amazon. They already possessed this remote. They took payments. They picked it up off the shelf. They placed it in an Amazon labeled envelope. And then they placed it in the UPS truck, putting in the stream of commerce. At that point, that's when their agreement comes in, the title transferred by their own agreement. And that's not all. Post-purchase, the other P, you got to deal through Amazon. You can't even deal directly with this mysterious Mr. Who that sold it from China or manufactured it. They have to go through Amazon. So it's a lot of power and control that Amazon has over this fulfillment by Amazon purchase. But what's key here is that Mr. Gartner did not buy a service. He bought a remote. He bought a product. So all this analogy of center point where you're buying an apartment building versus buying stucco like fresh coat, we can bring it up and we can discuss it. But this was clearly the purchase of a product, not of a service. Mr. Murphy would say there's another P, which is precedent. And he points to New Texas Auto and says his view of that case says you're out of luck. It's an interesting case. So what New Texas Auto says in and of itself, it's a one-off case. It's an extremely unusual situation where an auctioneer was ordered by the arbitrator to actually take title to the car. And what's interesting is you can actually take that case to understand that title is not critical to the discussion of whether or not somebody is a seller of Chapter 82, because a New Texas Auto, they had title, but they were not deemed to be a seller. What this all goes to the argument of what everybody focuses on with the definition number three in Chapter 82 is what is a seller? And you've got to be engaged in the business and what they... Does Texas products law require a seller to hold title to the product? Do I'm sorry? Does Texas products law require a seller to hold title to the product? Absolutely not. No. And that's discussed again and again in the cases, but you got to be engaged in the business of this auctioneer was never in the business of selling directly cars that it owned. It was forced by an arbitrator to do this really unusual situation. And so, you know, there was litigation over it and the court said, well, wait a second, this is really, really different. But then they analyzed his law in regards to Chapter 82. And they came up with some important things that we think actually make Texas law very clear. You've got to be in the business of selling. It can't be merely incidental, which clearly wasn't this situation with the seven Ps. It can't be a one-off and title is not the deciding factor. And those are all from New Texas Auto. So Texas law, what Amazon is actually seeking in this case is an exception to Texas law for the way they practice business, not an application of Texas law. They want to have this exception that none of these other Texas businesses get, and they get an advantage over all these other Texas retailers, mom and pop stores, Best Buy, Macy's. Let me ask you about some other businesses. Would you say that Grubhub, DoorDash are those sellers? I mean, they're in the business of selling food, selling and delivering food to But it really is going to be fact specific. As CenterPoint says, you look at the facts in any particular case. So sure, in certain situations, a Grubhub could become a libel if they had, if they possessed it, if they if they control the situation and they put it in the stream of commerce. Certainly. But, you know, that would be I don't have those facts before me, Your Honor. But what about the delivery services? I mean, they say, oh, if we find that Amazon's a seller, that means UPS. And, you know, surely that can't be the case. What do you say about UPS? Sure. But that's a complete red herring, because then you go back to what I just discussed. You got to be in the business of selling. So Amazon is in the business. They've got a ton of remotes on their website. That's what he was looking for. They're in the business of selling remotes. UPS FedEx is not in the business of selling the products they're delivering. They're just delivery services. So complete red herring on the court. The I want to chat about indemnity. That's part of Chapter 82. Now, Amazon can seek indemnity from the manufacturer, Mr. Hu. They've chosen not to do that. That's in there. That's how I think Amazon, a lot of their argument is, well, you know, we're the innocent retailer, but they're the ones that chose to do business with this Mr. Hu and to sell that product, was in clear violation of UL safety standards. And that's why this button battery popped out and harmed this little girl. So they have every right to deny any of these potential manufacturers from overseas the right to use the Amazon service. And they chose not to do that in this situation. In fact, after this happened, they reached out to it's USA Shopping is Mr. Company, and they disappeared. This mysterious little fly-by-night company is just poof gone. So they're no longer on the Amazon.com website, but there are still similar remotes. What's your view on the certification question? Judge Willard asked. I know the amicus that filed a brief in your, in support of your position, noted that possibility. What's your position? Well, clearly that's an option, but I'll tell in the summer judgment phase, we've taken a lot of deposition. We'd still have to do trial. If we go to the Texas Supreme Court, especially with the COVID delays, it could be, I don't know, a couple of years before they decide. Then we come back and who knows how the witnesses usually do. Judge Willard would know better than I do, but my experience on the receiving end of the certification is that they usually do it well within a year. They prioritize certifications from the circuit. Okay. So, I mean, it's always good to be first in line, obviously with, with us having the burden of trying the case, the sooner we can get to where the witnesses facts are fresh in their minds, the better for our clients. So we would prefer that the fifth circuit make a ruling on it. We do think that the Texas law is clear and that what Amazon's doing is they're really twisting things and they're trying to make it seem like Texas law is unclear and create an exception for Amazon, rather than if you look carefully like Judge Gilmore did, they fit the definition of a seller. It's just that these laws were created way before e-commerce became so huge, but the law is the same. But we would, I mean, Texas, I think there's the California decision. Other than the California intermediate appellate decision, has any state said that Amazon in this situation is a seller? And I understand each state has their own definition of seller and all that. And I also understand the facts in these cases are, you know, sometimes there's more or less involvement by Amazon, but, but just big picture, generally my, from what I was looking at, the only that California intermediate, it's at least the only state court that's, that's held in favor of a plaintiff. Is that right? Well, there was the, the Oberdorf decision, as you know, that, that got sent on bonk, and then they sent it to get certified. And then the case got resolved, just my understanding. So there's not going to be a decision in Pennsylvania. Oh, really? I didn't realize that. Okay. The third circuit, the certification is not going to produce anything. Okay. That, that's what I heard. And Mr. Murphy can address that. But, but there's the two state farm cases, one in Mississippi, one in Wisconsin, and they ruled in favor of finding liability on Amazon, the legal aid of Nebraska versus China case. I mean, the cases, and like you said, your owner, I agree, like the, the Erie case that Mr. Murphy brought up, well, that state requires title. It actually is very clear that the seller has to own title for it to be a sale. So that doesn't apply. And a lot of these cases that are cited in the appellate's brief, they're not FBA cases. And that makes a big difference. This is FBA where there is clearly possession and that's a big deal under Texas law. And clearly they took it and physically put it in the stream of commerce by giving it to UPS and sending it on its way. So we think that we would prefer that the court looks to this case, not to all these other cases out there. Although we do like the decision in California was just recently done and it's very similar effects. Was there any question in your mind about whether Amazon acquires title? Well, they do not have like a document that says we now own this remote, but they did have that document, like I showed you where they have the power to transfer the title to the buyer. And so there's the transfer of title requirement that Mr. Murphy seems to to seem as important in this case. Would they be an agent of the manufacturer in transferring the title rather than holding title themselves? I'm sorry to understand. Do they act as an agent to the manufacturer? As opposed to acquiring title from the manufacturer and then transferring title, would they be in the nature of an agent of the manufacturer for purpose of sale and transfer? That seems to be a good analogy, Your Honor. And it's interesting because nobody really the definition of the seller and the indemnity with the cases are showing like Centerpoint and Freshcoat and Centerpoint. These entities actually want to be sellers. It's kind of ironic. And so the court is saying, well, in Freshpoint, we're going to give you a seller, we're going to give you the right of indemnity against the manufacturer. And Centerpoint, they said no. But I don't think there was discussion of agency in those cases. There wasn't a whole lot of discussion about price, but there was an interesting case that you can refer to as Apple versus Pepper, where there was some discussion about setting the price was important. And the U.S. Supreme Court said, well, I mean, come on, Apple is the one that's essentially setting the price. And you can't gerrymander around the laws in order to exclude yourself from antitrust laws. And that's another thing that's a danger in finding in favor of this exception that's won by Amazon, is that now that encourages all these other companies like Walmart and eBay, they're already starting to copy Amazon's model to gerrymander and twist things to basically abrogate consumer products laws to protect customers. And so the U.S. markets can get flooded with these knockoffs that are dangerous and that are not in compliance with U.L. standards. All right. Anything else, counsel? Well, just in conclusion, if I might remind the court, scrolling or strolling Texas law, it just doesn't matter. And the reality is that a huge amount of commerce is performed every day in this manner. We've got to look on this as a case-by-case basis. We've got the seven Ps. This is not a mere incidental action by Amazon, where they're facilitating the stream of commerce and not just paddling the stream. They are intricately involved in the sale of this remote. This is a product. It's not a service that was involved here in this case. Amazon's in the business of selling this product. They placed it in the stream of commerce. Under these facts, Amazon is clearly a seller. So Mrs. McMillan and her husband, Mr. Gartner, they have an injured daughter and they deserve their day in court. Thank you. All right. Thank you, counsel. You have some time left. Amazon doesn't advertise products for sale, does it? Well, they do. I mean, their whole business platform is... You go by the web and you try to order a product that you've seen or learned of somewhere else, don't you? And if Amazon has it on a shelf, they'll send it to you. If they don't, you don't get the product. But Amazon's not out there contacting potential purchasers, are they? Well, no, they're not proactively doing that. I know that they're intricately involved in kind of the electronic marketing where they have the deals. When you Google something, where's their placement? That pops up on your screen. But none of that is relevant to the under Chapter 82, whether or not they proactively advertise the product. All right. Any other questions? Thank you, Your Honor. All right. Thank you, Mr. Meyerson. Mr. Murphy, you get the last five minutes here. Unmute yourself. I think you need it. Can you hear me now? Yes. My apologies. So nothing in the plaintiff's presentation identified anything in the definition of seller under Texas common law or the Texas Product Liability Act that permits a court to base seller status on possession. And the auction case outright prohibits that because the auction possessed the product. That is the conclusive answer under Texas law. If possession were enough, the auction, which possesses and is basically engaged in business, would have been regarded as a seller. Now, plaintiff, like the district court, says that the auction case is really just about the occasional seller principle. That's not true. The argument that the plaintiff made in New Texas Auto was this unique quirk of taking title takes us out of the general rule. And the court rejected that. And to do that, it had this general rule applies to this situation as well. And it articulated the general rule, which I discussed in my opening presentation, and nothing within that permits possession. On this point of title, the provision that plaintiff cites in the condition of use at R-522, that deals with the timing of a transfer of title. It doesn't deal with who has title. The correct provisions that deal with who has title are in the business solutions agreement, which is at R-293 and R-297. The specific provisions are provisions F-6.2, provisions F-7.2, and provision F-15. Those provisions make clear that title resides with the third-party seller, not Amazon, even. And those are FBA-specific provisions of the business solutions agreement. Judge, we'll ask about whether product liability law requires holding title. Of course, the answer in general is no, because Armstrong Rubber recognizes that there are other non-sale transactions that don't require title. That'd be the lessors and so forth. But when a product reaches a consumer through a sale, the key feature of that sale is the transfer of title, as I discussed earlier, 2-106 in the Hagar case from the Texas Supreme Court. And the fact that title is so central to what constitutes a sale, that tells us who the buyer and seller are. The seller conveys the title, the buyer receives it. So title is absolutely relevant under Texas law. New Texas Auto cited Restatement 3rd, Section 20, Part A, which defines selling in terms of title. And that puts Texas law squarely in line with the Fourth Circuit's analysis of Maryland law in the Erie case. Speaking of the cases that address Amazon, I mentioned Steiner earlier. That's the case where the Ohio Supreme Court, in the 7-0 opinion, there was one separate opinion on the point that the legislature might want to look at things, but the result was 7-0, where the court said that Amazon, by providing a website where the third-party seller sold caffeine powder that caused a death of a teenager in Ohio, Amazon does not have sufficient control. And the key part of that opinion is Ohio has a statute that uses some similar language to Texas, but it's actually a little broader. The Ohio statute bases supplier status on certain specific acts, but also uses the language, otherwise participates in placing the product in the stream of commerce. So it's a little bit broader. My recollection is the Ohio case was not a warehouse of the caffeine powder. Your recollection is correct, Your Honor. That was not an FBA case. The only case that deals with FBA that has said Amazon is a seller is the California Intermediate Court of Appeals case that you noted. And there are a number of reasons not to follow that case, because a number of reasons why Texas law is not remotely similar to California law. For one thing, Bolger based liability on the concept that Amazon could be a mere facilitator. Did I lose people? We have you. You can keep going. Oh, okay. I'm sorry. At least I have you. I think we're okay. Okay. Bolger based seller status on the concept of merely facilitating, and New Texas auto precludes that. But also California and Texas have been going in different directions. California has never adopted a product liability statute, has never adopted any defenses for sellers. Texas has. And I see that I'm out of time. All right. We have an agreement. Thanks to both sides. That concludes the day sitting. You all can exit Zoom.